IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROCKETPOWER, INC., a Delaware corporation,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>STRIO CONSULTING, INC., a Minnesota corporation,<br><br>　　　　Defendant.　　　　　　　　　／ | No. C 19-02900 WHA<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER AND DENYING MOTION TO DISMISS AS MOOT** |

**INTRODUCTION**

In this action, defendant moves to dismiss the complaint or alternatively to transfer the action to the District of Minnesota. For the reasons herein, the motion to transfer is **GRANTED**.

**STATEMENT**

Plaintiff RocketPower, Inc. is a California-based corporation which provides staffing services to companies in California, Arizona, and Texas. Defendant Strio Consulting, Inc. is a Minnesota-based corporation that supplies staffing solutions in eighteen states. They entered into a non-exclusive verbal agreement in 2017. In other words, RocketPower used Strio's services for some of its clients, but not all (Dkt. Nos. 8-1 ¶ 7; 11 at 4 n.2; 11-1, Exh. 5 ¶¶ 2–3, 5–6, 10–11).

The operative complaint references three separate contractual relationships. *First*, the aforementioned 2017 verbal agreement entered into by Strio and RocketPower. *Second*, the agreements between RocketPower and its clients. *Third*, the agreements between Strio/RocketPower and their recruits (Dkt. No. 11-1, Exh. 5 ¶¶ 9, 36–37, 60–61).

The 2017 verbal agreement provided that Strio and RocketPower would split expenses and profits. RocketPower controlled the business processes. Strio managed payroll and employee benefits. Strio also helped RocketPower find recruits (*id*. ¶¶ 9–11, 13, 16–17).

To illustrate, when a RocketPower client identified a hiring need, the client contacted RocketPower. In turn, both RocketPower and Strio advertised the position and solicited candidates to apply. A blended team of RocketPower and Strio employees screened applicants and extended verbal offers to selected candidates. Following the verbal offer, the same RocketPower or Strio employee who made the verbal offer then sent a written confirmation. The recruit would then be operationally controlled by a RocketPower coordinator. Strio executed the final paperwork. All of this is based on the allegations in the complaint (*id*. ¶¶ 12–18).

Recruits executed one of three forms of agreement with Strio/RocketPower: (i) an "Employment Agreement"; or (ii) an "Independent Contractor Agreement"; or (iii) a "Consultant Employment Agreement" (Dkt. Nos. 8-1 Exhs. A, B; 11-3 Exhs. B, D, E). Sometimes these agreements mentioned RocketPower, sometimes they did not. In the examples of the employment and independent contractor agreements provided, RocketPower is mentioned throughout — on equal footing with Strio (Dkt. Nos. 8-1 Exhs. A, B; 11-3 Exh. B). In contrast, in the examples of the consultant agreements provided, RocketPower is never mentioned (Dkt. No. 11-3 Exhs. D, E).

The operative complaint homed in on two particular recruits hired through the above process who executed *consultant* agreements. Both worked in California for two RocketPower California clients. Specifically, in January 2018, a RocketPower California-based client named Reflektive hired Christine Covert through the RocketPower/Strio partnership. In July 2018, another RocketPower California-based client named Minted hired contractor Paula-Anne Sherron through the RocketPower/Strio partnership (Dkt. No. 11-1, Exh. 5 ¶¶ 36–37, 60–67).

The terms of the agreements with these consultants were identical. Both agreements contained covenants not to compete, Minnesota forum-selection clauses, and Minnesota choice-of-law provisions (although they both also stated that the agreement "will be governed by the law of the state in which the [s]ervices are primarily performed"). Both agreements were solely

1  executed by a Strio Representative and the recruit. Neither form of agreement referred to
2  RocketPower (Dkt. No. 11-3 Exhs. D, E). Nonetheless, RocketPower eventually allowed both
3  consultants to accept employment with RocketPower's clients. Strio never waived the covenants
4  not to compete in the recruits' agreements (Dkt. No. 11-1, Exh. 5 ¶¶ 80–82, 86–87).

5  In April 2019, the relationship between RocketPower and Strio devolved into litigation
6  with each bringing claims against the other. *First*, on April 17, 2019, Strio filed its complaint in
7  the District of Minnesota against RocketPower and no one else stemming from the 2017 verbal
8  agreement between the two companies (Dkt. No. 11-1, Exh. 1). Strio alleged breach of contract,
9  unjust enrichment, and civil theft and conversion (*id*. at 6–7). Specifically, Strio accused
10 RocketPower of holding out on paying for expenses and sharing its received profits (*id*. ¶¶ 29,
11 33–34, 37–39). On May 24, 2019, RocketPower counterclaimed — accusing Strio of breaching
12 the 2017 verbal agreement among other claims (Dkt. No. 11-1, Exh. 3, Counterclaim ¶ 38).

13 *Second*, on April 30, 2019, RocketPower filed this action against Strio in San Francisco
14 Superior Court with no other defendants (Dkt. No. 11-1, Exh. 4). Strio removed (Dkt. No. 1).
15 The operative complaint alleged four claims: (i) declaratory judgment that the non-compete
16 provisions in the Strio/RocketPower employment/independent contractor/consultant agreements
17 are void under California law; (ii) intentional interference with RocketPower's contractual
18 relations with its clients (like Minted and Reflektive); (iii) negligent interference with
19 prospective economic advantage through its relations with its clients (like Minted and
20 Reflective); (iv) and violations of all three prongs of Section 17200 of the California Business
21 and Professions Code (Dkt. No. 11-1, Exh. 5 at 12, 15–17).

22 Strio now moves to dismiss or alternatively to transfer this action to the District of
23 Minnesota (Dkt. No. 8). This order follows full briefing (Dkt. Nos. 11, 16) and oral argument.

**ANALYSIS**

25 This order grants defendant's motion to transfer. The forum-selection clause in the
26 agreements executed between Strio and its contractors/employees is enforceable and binding on
27 interested parties to the agreements, namely RocketPower. This action shall be transferred to the
28 District of Minnesota.

3

1. **ROCKETPOWER'S REQUEST FOR JUDICIAL NOTICE.**

RocketPower requests for judicial notice of five items. These items will be permitted to a limited extent.

Rule 201(b)(2) provides that "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Here, RocketPower seeks judicial notice of five pleadings already filed in the public record (Dkt. No. 11-1). Specifically, RocketPower seeks notice of three pleadings filed in the action between the parties in the District of Minnesota, namely (i) the complaint, (ii) the answer, and (iii) the answer and counterclaim (*id.*, Exhs. 1–3), and two pleadings filed in this dispute in the San Francisco Superior Court prior to removal, namely (iv) the complaint and (v) the first amended complaint (*id.*, Exhs. 4–5).

Each of these pleadings have been publically filed. This renders *only* the pleading, the date of the pleading, and information contained therein *as having been pled* appropriate for judicial notice. To this limited extent, the five items requested for judicial notice is **GRANTED**.

2. **THE FORUM-SELECTION CLAUSE.**

An action may be transferred to another district "where it might have been brought." 28 U.S.C. § 1404(a). A forum-selection clause has "controlling weight in all but the most exceptional cases." *Atlantic Marine Constr. Co., v. U.S. Dist. Court for W. Dist. Of Texas*, 571 U.S. 49, 63 (2013) (citation omitted). Still, "[a] contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972).

The agreement between Strio/RocketPower and the independent contractors contains the following forum-selection clause (Dkt. No. 8-1, Exh. B at 7) (emphasis added):

> G. <u>Choice of Law/Forum Selection and Consent to Personal Jurisdiction</u>. This Agreement shall be governed, construed and determined according to the laws of the State of Minnesota without reference to principles of conflicts of law. Any claims for specific performance or injunctive relief relating to or arising out of this Agreement shall be heard solely in Hennepin County District Court in the State of

4

> Minnesota. *Contractor and SC/RP* consent to the
> exclusive jurisdiction of Hennepin County District
> Court for such claims. It shall be a violation of this
> Agreement for *Contractor or SC/RP* to bring any
> action in any other court if that action relates to or
> arises out of this Agreement in any manner.

SC/RP means Strio Consulting/RocketPower. The employment agreements exchange the words "Contractor" for "Employee" but otherwise contain the identical provision. RocketPower is therefore explicitly subject to these forum-selection clauses. Because the first claim in the operative complaint seeks a declaratory judgment that the non-compete provisions in these agreements are void under California law, these forum-selection clauses govern this complaint.

Turning to the consultant agreement executed by Covert and Sherron, and therefore, the agreements that cover the latter three claims alleged by the operative complaint, those agreements did not refer to RocketPower at all. Instead, they contained the following nearly identical forum-selection clause (Dkt. No. 11-3, Exhs. B at 7, E at 7) (emphasis added):

> G. <u>Choice of Law/Forum Selection and Consent to Personal Jurisdiction</u>. This Agreement shall be governed, construed and determined according to the laws of the State of Minnesota without reference to principles of conflicts of law. Any claims for specific performance or injunctive relief relating to or arising out of this Agreement shall be heard solely in Hennepin County District Court in the State of Minnesota. *Consultant and Strio* consent to the exclusive jurisdiction of Hennepin County District Court for such claims. It shall be a violation of this Agreement for *Employee or Strio* to bring any action in any other court if that action relates to or arises out of this Agreement in any manner.

Nevertheless, this clause also binds RocketPower. Our court of appeals has held that a court may enforce a forum-selection clause against a nonsignatory to a contract where "the alleged conduct of the non-parties is closely related to the contractual relationship." *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988); *see also Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 454 (9th Cir. 2007). Here, RocketPower's allegations are predicated on its close relationship with Strio, namely that RocketPower is a joint employer of recruits like consultants Covert and Sharron. These claims are "closely related" to the recruit agreements. RocketPower is therefore bound to the forum-selection clause.

5

Plaintiff argues that the forum-selection clause is unenforceable against RocketPower for two reasons. *First*, RocketPower did not agree to the forum-selection clause in any of the agreements. *Second*, the clause contravenes California's strong public policy of litigating labor disputes that arise in California within the state.

Turning to plaintiff's first argument, RocketPower argues that it is not bound to a contract it did not sign. RocketPower attempts to distinguish *Manetti-Farrow, Inc. v. Gucci America, Inc.* (Neither party mentioned *Holland America Line Inc. v. Wartsila North America, Inc.*) Specifically, RocketPower argues that the purpose of the holding was to resolve all claims in the same forum. According to RocketPower, this purpose could not occur here due to the continuing litigation in Minnesota.

A closer examination of our court of appeals' decisions, however, undermines RocketPower's argument. The conclusions were not based on mere efficiency. Rather, the central issue in both decisions was whether the nonsignatories were on notice of the clause.

More specifically, in *Manetti-Farrow*, our court of appeals held that a variety of nonsignatory defendants would be bound to a forum-selection clause. *See* 858 F.2d at 510. Specifically, the nonsignatory defendants were each involved in some way in ratifying or executing the contract between the signatories. *Id*. at 511. Our court of appeals therefore subjected the forum-selection clause to all signatory and nonsignatory defendants.

Similarly, in *Holland America*, our court of appeals again bound two nonsignatory defendants to a forum-selection clause. 485 F.3d at 454. There, the plaintiff, Holland America, entered into a contract with Bureau Veritas obligating Bureau Veritas to perform surveys of the plaintiff's cruise ships. *Id*. at 455. The signatories to the contract were Holland America and Bureau Veritas. An accident caused severe damage to one of the plaintiff's ships. The plaintiff alleged claims against Bureau Veritas and several entities, including BVNA and BV Canada. *Ibid*. Our court of appeals noted that while Bureau Veritas, BVNA, BV Canada, were separate entities, "Holland America's relationship with BV Canada and BVNA arose out of and was intimately related to its relationship with Bureau Veritas." *Id*. at 456 n.2. Thus, our court of appeals held that the forum-selection clause applied to claims against nonsignatories BVNA and

6

BV Canada "because any transactions between those entities and Holland America took place as part of the larger contractual relationship between Holland America and Bureau Veritas." *Id*. at 456.

So too here. The recruits' relationship with non-signatory RocketPower arose out of the these agreements executed with Strio. Some of the agreements with the recruits mentioned RocketPower by name. RocketPower therefore surely knew that the very clause saying it too would litigate in Minnesota was in the written agreement imposed on some of its employees and contractors. Yet, even if RocketPower did not know, RocketPower reaped profits from this arrangement, and so it should have known that it had foisted this forum on scores of recruits. Accordingly, fairness requires that RocketPower take some of the same Minnesota medicine it had helped force down the throat of the employees. When the employees became bound to litigate in Minnesota, RocketPower did as well.

Turning to plaintiff's second argument, California Labor Code Section 925 makes forum-selection clauses voidable per public policy. Section 925 states, in part (emphasis added):

> (a) An employer shall not require an employee who primarily resides and works in California, as a condition of employment, to agree to a provision that would do either of the following:
>
> (1) Require the employee to adjudicate outside of California a claim arising in California.
>
> (2) Deprive the employee of the substantive protection of California law with respect to a controversy arising in California.
>
> (b) Any provision of a contract that violates subdivision (a) is voidable *by the employee*, and if a provision is rendered void at the request of the employee, the matter shall be adjudicated in California and California law shall govern the dispute.

RocketPower is not an employee and therefore Section 925 does RocketPower no good. Furthermore, the provisions which violate subsection (a) are not *void*, but *voidable at the request of the employee*. As contractual provisions that violate Section 925 are not per se unenforceable, RocketPower cannot slide its way into Section 925 through Section 17200's unlawful prong. These arguments are rejected.

7

**CONCLUSION**

For the foregoing reasons, defendant's motion to transfer is **GRANTED**. The Clerk shall **TRANSFER** this civil action to the United Stated District Court for the District of Minnesota. Defendant's motion to dismiss for lack of personal jurisdiction is **DENIED AS MOOT**. To the limited extent stated, RocketPower's request for judicial notice is **GRANTED**.

**IT IS SO ORDERED.**

Dated: July 17, 2019.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE